1

2

3
**NOT FOR CITATION**

4
IN THE UNITED STATES DISTRICT COURT

5
FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7
HOWARD WEBB,                              )          No. C 02-1220 PJH (PR)
                                          )
8
                 Petitioner,              )          ORDER DENYING PETITION
    vs.                                   )          FOR WRIT OF HABEAS
9                                         )          CORPUS
    GEORGE M. GALAZA,                     )
10                                        )
                 Respondent.              )
11
_____       )

12

13
     This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. §

14
2254.  The court ordered respondent to show cause why the writ should not be granted.

15
Respondent has filed an answer and a memorandum of points and authorities in

16
support of it, and has lodged exhibits with the court.  Petitioner has filed a traverse.  The

17
petition is now before the court for ruling.

18
**BACKGROUND**

19
     A Monterey County jury convicted petitioner  of two counts of committing lewd

20
acts upon a child under the age of fourteen.  See Cal. Penal Code § 288(a).  With

21
enhancements, he was sentenced to prison for sixty years to life.  His conviction and

22
sentence were affirmed by the California Court of Appeal[1] and he did not seek review.

23
_____

24
    [1] Appellate counsel filed a "Wende brief."  In People v. Wende, 25 Cal. 3d 436
(1979), the California Supreme Court established a procedure for those cases which
25
appellate counsel believes to be frivolous.  Counsel, upon concluding that an appeal
would be frivolous, files a brief with the appellate court that summarizes the procedural
26
and factual history of the case.  Counsel also attests that he or she has reviewed the
record, explained the evaluation of the case to the client, provided the client with a copy
27
of the brief, and informed the client of the client's right to file a pro se supplemental brief.
Counsel further requests that the appellate court independently examine the record for
28

1    However, he did file state habeas petitions with the Monterey County Superior Court, the

2    California Court of Appeal and the California Supreme Court, all of which denied the

3    petitions.

4         As grounds for habeas relief, he asserts that:  (1) His trial counsel was ineffective

5    in that he failed to perform an adequate investigation; (2) his trial counsel was ineffective

6    in failing to prepare a defense; and (3) the evidence was insufficient to prove his

7    convictions beyond a reasonable doubt.

8         Petitioner was charged with molesting a child, Candace Boyd.  Petitioner was

9    the live-in boyfriend of Linda Hill, who is the mother of Candace. Ex. 3 (Reporter's

10   Transcript) at 26-30, 98.  All three lived in the same home with Candace's two brothers.

11   Id. at 26-28, 98.  Candace was nine-years old at the time of the offenses.  Id. at 25, 27.

12        In the first incident, petitioner was accused of molesting Candace when she was

13   sleeping on the bottom bunk of her bed with her three cousins.  See id. at 31-34.  A

14   brother was sleeping in the upper bunk.  Id. at 31.  Candace awoke to find petitioner on

15   his knees beside her bed.  Id. at 33.  She fell back asleep, awoke again, but did not

16   open her eyes.  Id. at 33.  She felt petitioner's penis rubbing against her leg, making

17   skin-to-skin contact.  Id. at 34.  After a short while petitioner stopped and went away.  Id.

18   at 34-35.  Candace lay there for a while, too scared to move, then got into the upper

19   bunk with her brother for a while.  Id. at 35. The next day Candace told her mother about

20   the incident, but her mother could not believe what happened and said to Candace,

21   "Probably you're dreaming." Id. at 36-37, 101.  Candace testified that she replied,

22   "Probably." Id. at 37.  Her mother, on the other hand, testified that Candace said "no" to

23   her suggestion that she must have been dreaming.  Id. at 101.  Her cousin April, who

24   _____

25   arguable issues.  See Smith v. Robbins, 528 U.S. 259, 265 (2000) (citing Wende).  The
26   appellate court, upon receiving a "Wende brief," conducts a review of the entire record
     and affirms if it finds the appeal to be frivolous.  If, however, it finds an arguable (i.e.,
27   nonfrivolous) issue, it orders briefing on that issue.  Id. at 266.

28                                          2

1   was present at the time said, "Maybe you were." Id. at 102.  When asked at trial if she

2   thought she had dreamed the incident, Candace replied, "It really happened." Id. at 37.

3           The second incident occurred when Candace came back from church and went

4   to her bedroom and turned on her television, with the volume off.  Id. at 39-41.  Candace

5   watched television for a while and then fell asleep.  Id. at 41.  Petitioner was accused of

6   molesting her when he went to turn off the television.  See id. at 42, 44-46, 67-68.

7           After the second incident, Candace's mother brought her to a hospital for

8   examination.  Id. at 122-123.  Dr. Fitzgerald used a rape kit on Candace and performed

9   a direct visual examination.  Id. at 135.  Dr. Fitzgerald did not use a speculum or a

10  colposcope.  Id. at 135, 140.  She testified that there were no bruises or abrasions.  Id.

11  at 139.  Although there were no physical findings in her report, her observations could

12  still be consistent with what Candace had told her about the molestation.  Id. at 137.

13          The following day, Dr. Barnes, a pediatrician, examined Candace.  Id. at 77.  Dr.

14  Barnes used a colposcope for examination.  Id. at 78.  Dr. Barnes testified that there

15  was redness of the labia minora.  Id. at 78-79.  The redness suggested a friction injury,

16  which was consistent with penetration by a finger and a penis.  Id. at 81-82, 84.  Further,

17  Dr. Barnes found internal injuries consistent with both digital and penile penetration.  Id.

18  at 91-92.  There was marked redness and increased vascularity below and around the

19  hymen and in the vagina and the cervix.  Id. at 79.  She also observed redness on the

20  vaginal walls and the posterior fossa.  Id. at 80.  The color of the tissues was described

21  as "beefy red" when they should have been bright pink.  Id. at 80.  The positioning of the

22  redness of the labia minora was consistent with digital penetration because the majority

23  of the injury occurs to the upper portion of the genital structures due to the fact that a

24  finger enters at a different angle than a penis.  Id. at 91-92.

25          Further facts will be set out in the discussion below.

26                                          **DISCUSSION**

27

28                                               3

A.    Standard of review

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, Williams (Terry) v. Taylor, 529 U.S. 362, 407-09 (2001), while the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 123 S.Ct. 1029, 1041 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams (Terry), 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. See id. at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El, 123 S.Ct. at 1041.  This presumption is

4

1   not altered by the fact that the finding was made by a state court of appeals, rather than

2   by a state trial court.  Sumner v. Mata, 449 U.S. 539, 546-47 (1981).  A petitioner must

3   present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of

4   correctness; conclusory assertions will not do.  Id.

5       Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual

6   determination will not be overturned on factual grounds unless objectively unreasonable

7   in light of the evidence presented in the state-court proceeding."  Miller-El, 123 S.Ct. at

8   1041.

9       When there is no reasoned opinion from the highest state court to consider the

10  petitioner's claims, the court looks to the last reasoned opinion, which in this case is the

11  superior court's ruling on petitioner's state petition for habeas corpus.  Ylst v.

12  Nunnemaker, 501 U.S. 797, 801-06 (1991).

13  B.      Issues Presented

14      Petitioner asserts that he was denied effective assistance of counsel when his

15  trial counsel failed to (1) investigate the case and interview witnesses, and (2) "present

16  a defense."   Although his arguments in the petition are grouped under these headings,

17  in fact they consist of a number of separate arguments or claims, not all of which

18  necessarily go where he has placed them – for instance, he complains of counsel's

19  cross-examination of a doctor, among other things, under the "failure to investigate"

20  heading.  Nevertheless, the court discusses each contention below under the heading

21  petitioner has used.

22      1.      Standard

23      A claim of ineffective assistance of counsel is cognizable as a claim of denial of

24  the Sixth Amendment right to counsel, which guarantees not only assistance, but

25  effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).

26  The benchmark for judging any claim of ineffectiveness must be whether counsel's

27

28                                          5

1    conduct so undermined the proper functioning of the adversarial process that the trial

2    cannot be relied upon as having produced a just result.  Id.

3        In order to prevail on a Sixth Amendment ineffective assistance of counsel claim,

4    petitioner must establish two things.  First, he must establish that counsel's performance

5    was deficient, i.e., that it fell below an "objective standard of reasonableness" under

6    prevailing professional norms.  Id. at 687-88.  Second, he must establish that he was

7    prejudiced by counsel's deficient performance, i.e., that "there is a reasonable

8    probability that, but for counsel's unprofessional errors, the result of the proceeding

9    would have been different."  Id. at 694.  A reasonable probability is a probability

10   sufficient to undermine confidence in the outcome.  Id.  A court need not determine

11   whether counsel's performance was deficient before examining the prejudice suffered

12   by the defendant as the result of the alleged deficiencies.  Id. at 697; Williams v.

13   Calderon, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995) (applauding district court's refusal

14   to consider whether counsel's conduct was deficient after determining that petitioner

15   could not establish prejudice), cert. denied, 516 U.S. 1124 (1996).

16       2.    Failure to investigate

17       A defense attorney has a general duty to make reasonable investigations or to

18   make a reasonable decision that makes particular investigations unnecessary.

19   Strickland, 466 U.S. at 691.  The duty to investigate and prepare a defense does not

20   require that every conceivable witness be interviewed.  Hendricks v. Calderon, 70 F.3d

21   1032, 1040 (9th Cir. 1995).  A claim of failure to interview a witness cannot establish

22   ineffective assistance when the person's account is otherwise fairly known to defense

23   counsel.  Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986).  A defendant's

24   mere speculation that a witness might have given helpful information if interviewed is not

25   enough to establish ineffective assistance.  Bragg v. Galaza, 242 F.3d 1082, 1087 (9th

26   Cir.), amended, 253 F.3d 1150 (9th Cir. 2001).

27

28                                        6

Here, petitioner provides no more than speculation as to what an investigation might have revealed. For instance, he contends that interviews with "family members" might have revealed evidence of the witness' "vindictiveness, " but gives no hint that such evidence exists, nor does he specify what sort of evidence it might be. Pet. (typewritten attachment to form petition) at 4.

The only specific assertion he provides is his claim that his counsel failed to interview and call the victim's cousin, April, to testify that the first incident never occurred. He claims that "nothing presented a more true version of the event than the actual witness, April." However, the only evidence in the record suggests that April and the other relatives were asleep when the first molestation occurred. Ex. 3 at 33, 36. April's comment, "Maybe you were" regarding the possibility that Candace had dreamed of the incident, and Candace's agreement with April's speculation, a strong defense point, were in evidence. If anything, calling April might have damaged the defense case, because it would have given her an opportunity to explain her comment; there would have been a risk, for instance, that she would say that her comment had been, as it appears on its face, pure speculation.

Petitioner has not provided any evidence that April had anything further to add. Thus, petitioner's counsel's performance was not deficient in failing to interview and call April to testify.

Petitioner also contends that his counsel failed to investigate the reports of the two doctors who testified at trial "to check their [sic] veracity." He does not explain what he means by this contention nor, even in general terms, what such an investigation would have turned up. This is not sufficient to establish ineffective assistance.

Petitioner also contends that it was ineffective for his counsel to hint that the red bruised area observed by Dr. Barnes might have been caused by Dr. Fitzgerald's use of a speculum, without prior knowledge of what instruments Dr. Fitzgerald used in her

1   exam.  Counsel asked Dr. Barnes if the redness could have been caused by use of a

2   speculum, and Barnes said it was not clear whether Dr. Fitzgerald had used a

3   speculum, and that if one were mishandled, it could have caused the bruising.  Ex. 3 at

4   87-88.  When Dr. Fitzgerald subsequently testified she said she had not used a

5   speculum.  Id. at 135.  Nothing was made of this, however; neither side used it in

6   closing.  See id. at 223-56.  Given that Dr. Fitzgerald's testimony that she had not used

7   a speculum came after Dr. Barnes' testimony, and with the victim's mother's rather

8   dramatic testimony in between, and that counsel did not link up the two points in

9   argument, it is not reasonably probable that counsel's asking that question affected the

10  outcome.

11          3.      Failure to present a defense

12          Petitioner also contends that he was denied effective assistance of counsel

13  because his attorney "prepared no defense."  Again, there simply is no evidence of this,

14  and in fact counsel did put on a defense.  He effectively established in cross-

15  examination that the victim disliked petitioner, ex. 3 at 161-63; 177-78; he put petitioner

16  on the stand to deny the abuse, id. at 191, 203; got Dr. Barnes, a very uncooperative

17  witness, to say that "one often thinks children are not telling the truth" and that the

18  physical signs could have been caused by something other than abuse, id. at 89, 92;

19  and argued in closing that there was no conclusive physical evidence of abuse, that the

20  victim had a motive to lie, and that there were inconsistencies in the testimony.  Id. at

21  230-49.

22          Among other things, petitioner asserts that counsel failed to explore a defense

23  involving the victim's history and her vindictiveness.  However, counsel vigorously cross-

24  examined the victim regarding whether she hated petitioner and wanted to get him out

25  of the house, id. at 161-63; established the same point with the victim's mother on cross

26  ("None of [the children] really cared for him"), id. at 151-52, and reinforced it with the

27

28                                           8

victim's statements to an investigating officer that she disliked petitioner. Id. at 177-78.

Petitioner also claims that his counsel failed to present a defense that the incident never occurred because there was no physical or scientific evidence pointing to his guilt. This is not strictly correct, as Dr. Barnes testified to physical signs of abuse. Id. at 78-82, 84. However, on cross-examination of Barnes counsel established that her observations were consistent with no abuse having occurred. Id. at 92.

Petitioner also asserts that a "Dr. Avila" should have been called as an expert witness to testify about his forensic findings and the improbability of the act ever having occurred. Pet. at 8-9. Dr. Avila apparently was on the prosecution's witness list to be called if there was usable evidence from the hospital sheet on which the victim was undressed. Ex. 3 at 7-10. Expert testimony is necessary when lay persons are unable to make an informed judgment without the benefit of such testimony. Caro v. Calderon, 165 F.3d 1223, 1227 (9th Cir. 1999). Where the evidence does not warrant it, the failure to call an expert does not amount to ineffective assistance of counsel. Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999) (a decision not to pursue testimony by a psychiatric expert is not unreasonable when the evidence does not raise the possibility of a strong mental state defense). Here it was not necessary to call an expert to explain the negative results of the rape kit, because the meaning would have been clear to a lay person -- that the rape kit, unlike the doctor's examination, did not provide physical evidence of abuse, thus tending to show that the abuse did not occur. Dr. Barnes testified that the absence of physical evidence of abuse, such as semen or pubic hairs, did not change her opinion that abuse had occurred. Id. at 97. Petitioner fails to show that Dr. Avila's testimony would have been any different, in which case counsel's best strategy was to minimize the amount of expert testimony which tended to explain away the absence of evidence from the rape kit, then argue the common-sense approach in closing that if there was no physical evidence, the abuse did not occur. Failure to call

1    the prosecution's witness when the rape kit proved negative was not ineffective

2    assistance.

3         Petitioner also asserts that counsel should have declined to stipulate to the

4    negative results of the rape kit.  However, counsel made effective use of this in closing;

5    although it might have been more effective to present this evidence by way of a testifying

6    witness, that, as always, would also introduce uncertainties and risks.  In this context, at

7    least, the decision to stipulate was not ineffective.

8         Petitioner has failed to show that his counsel was ineffective.  Therefore, the

9    state appellate courts' rejection of this claim was not contrary to, or an unreasonable

10   application of, clearly established United States Supreme Court authority.

11        3.   <u>Sufficiency of the evidence</u>

12        Petitioner contends that there was insufficient evidence to support the conviction.

13        A state prisoner who alleges that the evidence in support of his state conviction

14   cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt

15   beyond a reasonable doubt states a constitutional claim, <u>Jackson v. Virginia</u>, 443 U.S.

16   307, 321 (1979), which, if proven, entitles him to federal habeas relief.  <u>Id.</u> at 324.  A

17   federal court reviewing collaterally a state court conviction does not determine whether it

18   is satisfied that the evidence established guilt beyond a reasonable doubt.  <u>Payne v.</u>

19   <u>Borg</u>, 982 F.2d 335, 338 (9th Cir. 1992), <u>cert. denied</u>, 510 U.S. 843 (1993).  The

20   federal court "determines only whether, 'after viewing the evidence in the light most

21   favorable to the prosecution, any rational trier of fact could have found the essential

22   elements of the crime beyond a reasonable doubt.'" <u>Id.</u> (quoting <u>Jackson</u>, 443 U.S. at

23   319).

24        Petitioner contends that the evidence was insufficient because there was no

25   scientific evidence -- semen, pubic hairs -- to support it.  As the previous paragraph

26   reflects, that is not the standard.  Here, the verdict was supported by the testimony of the

27

28                                              10

1    victim and physical evidence testified to by Dr. Barnes.

2         Petitioner admitted that the victim was an honest child and he could think of no

3    reason why she would make such allegations against him. Ex. 3 at 204, 206. Although

4    he alleged that the victim's mother was behind her making these allegations, he could

5    not offer credible proof that she was. Id. at 205-206. Rather, the evidence showed that

6    the victim's mother did not want to believe that petitioner molested her daughter and did

7    not immediately report him to police. See id. at 101. In addition to petitioner's

8    acknowledgment that the victim was an honest child, the victim's credibility is sustained

9    by her account of the second incident, which is consistent with the physical evidence.

10        The victim testified that with regard to the second incident, petitioner molested

11   and sexually assaulted her when she came back from church and went to her bedroom.

12   Id. at 39-46. The victim's story is consistent with the findings of Dr. Barnes, a

13   pediatrician for seventeen years who specialized in examining child victims of sexual

14   assault, having examined approximately 1200 of them. Id. at 75. Barnes, who

15   examined the victim with a colposcope, found an external injury. Id. at 76, 78-79. She

16   observed the victim had a redness of the labia minora which she felt was caused by

17   friction from the penetration of a finger or penis. Id. at 80-84. Further, Barnes found

18   internal injuries consistent with both digital and penile penetration. Id. at 91-92.

19   Specifically, there was marked redness and increased vascularity below and around the

20   hymen and in the vagina and the cervix. Id. at 79. She also observed redness on the

21   vaginal walls and the posterior fossa. Id. at 80. The color of the tissues was described

22   as "beefy red" when they should have been bright pink. Id. at 80. The positioning of the

23   redness of the labia minora was consistent with digital penetration because the majority

24   of the injury was to the upper portion of the genital structures due to the fact that a finger

25   enters at a different angle than a penis. Id. at 91-92.

26        In addition to Barnes' testimony, the victim's mother testified that petitioner was

27

28                                                11

1 not in bed beside her when she woke up. Id. at 109. At that point, she hollered his

2 name and looked down the hall. Id. She saw him coming out of the victim's bedroom,

3 trying to shut his robe. Id. at 111. She called his name four times before she saw him

4 come out of her daughter's bedroom. Id. She asked him what he was doing in her

5 daughter's room. Id. at 112. She testified that he did not look at her and replied that he

6 was seeing what the victim was doing. Id.

7    Petitioner's lack of credibility was displayed when Officer Gray testified that

8 petitioner claimed he did not know why he was being arrested, when in fact the victim's

9 mother had confronted him with allegations of his molestation. Id. at 121, 128.

10    A rational trier of fact could find that there was sufficient and credible evidence to

11 prove petitioner's conviction beyond a reasonable doubt, even in the absence of

12 scientific evidence. Accordingly, the decision of the state court was neither contrary to

13 nor involved an unreasonable application of clearly established federal law as

14 determined by the Supreme Court.

15                              **CONCLUSION**

16    For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

17 The clerk shall close the file.

18  IT IS SO ORDERED.

19 DATED:  October 5 , 2005.

20                              _____
                                   PHYLLIS J. HAMILTON
21                                 United States District Judge

G:\PRO-SE\PJH\HC.02\ WEBB220.RUL

22

23

24

25

26

27

28                              12